3-090-565, in the matter of Daryll C, people of the state of Alabama can't believe that Gary Venedig, which is Daryll C, was found by Laurel Spahn. I'll show you my receipt. Thank you. Good afternoon. May it please the court, counsel, Mr. Venedig. My name is Laurel Spahn, and I'm an attorney with the Legal Advocacy Service Division of the Illinois Guardianship and Advocacy Commission. I think in this case the court initially had wished to waive oral argument, and I had filed an objection, so I thank the court for holding oral argument in this case. I'd like to first talk about least restrictive alternative. I think this is an easy issue for the court to reverse. There was no dispositional report that complied with the requirements of the Mental Health Code, and this court can follow recent precedents from this court, the Robin C case, Daniel M, Alaka W. This court has also said in both Alaka W and Robin C that this issue cannot be forfeited. So I think clearly there is a reversible issue here looking at the least restrictive alternative. But I would like to talk with you today about ineffective assistance of counsel. And I would just like to point out that court is nerve-wracking for even the healthiest of people. I have been representing clients in the trial court and the appellate court for a number of years now. I still get nervous. I have butterflies in my stomach right now. I would ask the court to just consider how the conversation in this case with the trial judge could have been different, would have been different if a court official, if the attorney, one of the attorneys, the bailiff, the court clerk, somebody else needed to use the restroom. May not have felt well. May have been, we don't know. May have been feeling ill that day or may have just had some nervousness. In our opening brief, we have a quotation from Professor Bruce Winnick's book that's called Civil Commitment, a Therapeutic Jurisprudence Model. And in that book, Professor Winnick talks about lawyers representing respondents who in civil commitment hearings sometimes, quote, relapse their adversarial role out of a false sense of paternalism, turning the commitment hearing into a phony ritual and producing distrust on the part of the patient, end quote. And I would add that this also gives the proceeding an air of having a foregone conclusion. That this is a formality, that we're here to go through the actions and get a commitment order and be done with it, move on to the next case. The attorney here at the trial was effective in one way. And that is that she did file a notice of appeal on behalf of the respondent. And that is from the record about all that we can tell actually happened here. So on behalf of the respondent, there is gratitude for that action that was taken. But the counsel was ineffective in at least five ways during the trial. There was the issue of the client's presence. That was dealt with, well, in a very discouraging way. The lack of objection to the vast hearsay testimony included in the record. The only witness was the treating physician. And he testified about all sorts of things. Of course, he did not observe things that happened before the respondent even got to the hospital under his care. Now, we know that hearsay, that kind of hearsay can be used as a basis for the doctor's opinion. But it's not considered substantive evidence of what actually happened to get the client, to get the respondent to the hospital. There was no objection to the lack of the written dispositional report as required by Section 3-810 of the Mental Health Code. And, of course, we know the dispositional report and disposition in general has been the topic of many recent appellate opinions. There was no cross-examination of the one witness. And the saddest example of all is that the respondent's counsel didn't know the length of the commitment order. You may recall that at the end of the hearing, the counsel asked the judge, could you please let me know how long this order is for? Because I'd like to advise my client. I'd like to let him know. And we explain in our briefs that that does call into question whether the attorney advised the respondent of any of his rights that he has in a commitment proceeding. Had the respondent known that this was an order for up to 90 days, he may have taken advantage of some of his other rights. And that's all explained in the briefs. I'd like to lastly turn to the topic of mootness. And I would point out that there are no other cases that we know of or that the state has brought out in which Darrell C. has been found subject to involuntary admission before. And according to a Westlaw search that's mentioned in the reply brief, I did that Westlaw search and did not find any cases for Darrell C., any state or federal cases. I did not find any cases using a search with the respondent's full name. Capable of repetition, that mootness exception was applied in the Robin C. case and also applies here. This court has two mootness exceptions that are available. And with that, I would just answer any questions of the court. Otherwise, I would reserve time for a rebuttal. The respondent ever returned to the hearing after going to bed? Not according to the record. The record doesn't say that he ever returned. I guess I assumed that he did not. Now, granted, if you look at the transcript of this hearing, take out the first page, take out the official stuff at the end, the hearing is maybe eight pages of testimony. We allow a minute per page. That was a pretty short hearing. You know, I don't know what was going on in the bathroom, but of course. He takes a newspaper and excuses himself when the hearing is about to begin. Well, I think. It can't be unusual, at least. I don't know if it's unusual. I can tell you what would happen in a trial where, you know, I was the attorney and my client wanted to go to the bathroom. I would not have said anything to prejudice him to the court for one thing or make him look foolish in the official record. I would have said, Your Honor, I know we're ready to start the hearing, but my client has advised me that he needs to use the restroom. I would ask for a brief recess. And I'm telling you, this happens all the time in Cook County. The judge would say, Okay, counsel, let me know when you're ready. And, you know, in Cook County we have close to 4,000 mental health petitions filed in a year. You know, there's also a need to get through the court hall in Cook County. But I can say that, at least there, the judges have some understanding. They reasonably accommodate respondents who need to use the restroom. Maybe this respondent, I don't know what was happening. Maybe he didn't want to come. I took a newspaper with him. It was obvious. It appears obvious. It's going to take a little while. Well, I don't know. I shouldn't be making those implications, perhaps. It's hard to say. It did seem a little strange. Well, I'll tell you that I never like to be without a book. If I have a couple of minutes where I'm waiting, I like to have a book, magazine, newspaper. I don't think we can take anything from that. No, you're quite right. And, frankly, I'm glad to see a respondent who's, you know, a mental health respondent who has access to a newspaper and who's reading the newspaper. So many respondents, I don't know, at state facilities, they have one newspaper for a unit. Everybody has to share the newspaper. They don't get to watch the news. They're only watching movies on video. So, I mean, I don't know. I don't think we can take anything from that. But, you know, you don't have to get to this issue of ineffective assistance. But I was here in October on an ineffective assistance case, too. That was Robin C. And, Justice Leighton, you were one of the justices there. And you may remember, I do not remember which justice said it, but somebody said, is this the Woody Allen approach to representation? And I didn't know what that meant. And then I think it was explained later that 90% of life is just showing up. There's recognition here that these attorneys are showing up. But that's about it. And I don't take this lightly that we're saying that a fellow defense counsel is ineffective. But when we do say it, it's because we think it's very important. And I don't know that we're going to see these cases going away as far as appeals involving ineffective assistance in mental health cases until this issue is addressed. Thank you. Thank you, Counsel. Counsel, you may argue. May it please the Court. Counsel. I'm going to take and address the issues in a somewhat different order because, obviously, having raised the issue of lewdness, I would agree with Counsel only to the extent of I don't think you have to address ineffective assistance, nor do I think you have to address the adequacy of the commitment order because this case under Alfred H. H. is lewd. The two exceptions that have been raised or that have been asserted here with respect to lewdness are the capable of repetition and avoiding review as well as collateral consequences. In this particular case, the issues that have been raised by the respondent are all very much fact specific. The fact that if you decide this case and if you were to take and decide, well, Counsel wasn't effective for one reason or another, that's really not going to have any direct bearing on Counsel that respond against the next case because Respondent, excuse me, Counsel in the next case could do other things that this Counsel didn't do, and yet still, nonetheless, it could be argued that subsequent Counsel was ineffective for one reason or another. So the same thing goes with respect to the second issue, that being the lack of report and the adequacy of the commitment order. That, too, is fact specific to this case. Depending upon what happens in any subsequent case, this case will have no bearing on it. The fact that we have the same respondent, the fact that there might be another subsequent hearing in an effort to involuntarily commit him, is not what is meant by capable of repetition and avoiding review. The Illinois Supreme Court in Alfred H. H. has set forth exactly what they meant in talking about this. They referred to their prior case, I believe it was In Re, a minor. And in that case, the newspaper sought review of a statute that allowed a trial judge the discretion to prevent the disclosure of the name of the minor. That was a case, that was a situation where the paper directly questioned the constitutionality of the statute. It was not fact specific about anything, because what they're saying is, we think that's unconstitutional, a violation of the First Amendment, etc., etc. As a result, that was a case, because it was so short, it would escape review and was something that could happen again. Not necessarily just with that particular minor, but any minor where a judge could take and withhold the name. So that is the kind of case we're talking about and dealing with when we talk about capable of repetition and avoiding review. The Supreme Court specifically excluded cases that are fact specific. That's the reason why in Alfred H. H., even though the facts are somewhat similar to what we have here, it was a situation where his issue that he was really raising was fact specific. As a result, it did not come within this first exception. When Alfred H., wasn't the respondent had been previously involuntarily committed on multiple occasions? Well, that was the second aspect. That wasn't the capable of repetition. That wasn't the first exception. It's collateral consequences. Collateral consequences. I'm jumping to that next. And so on the collateral consequence aspect, in Alfred H., the person had been involuntarily committed several times, right? What about this case? In this case, it appears as though the respondent has not been involuntarily committed before. He does have, besides simply having a prior history of an illness, he does have a prior history of voluntary commitments. So unlike Alfred H., I mean, you're saying this isn't like Alfred H. In the sense of this respondent does not have a prior involuntary commitment, but he has prior voluntary commitments. Is there? Is that the same? Is there a qualitative difference there? Well, is there? An admission is an admission. Whether you check yourself in and basically say, I need help, or you basically are involuntarily committed because you don't think you need help, but you do. The fact is, there's no illness. The fact is, you need help. The fact is, you've been hospitalized. The fact is, you have your medical history, you have your mental health record behind you. I don't think that this is the type of collateral consequence in this case, in this situation, okay, that would warrant application of this exception. I don't think there's really much of a qualitative difference. If you've been admitted to a hospital by yourself or involuntarily, it's still an admission. One, you're kicking and screaming, and the other one, you're not. Is there a difference there? I don't think so. Because this is, we're talking about the mental health of the individual. We're talking about trying to get an individual help, and it's not like, and I understand the process arguments. I understand, you know, if you are mentally ill, but you don't realize you have a mental illness and you believe you're being placed in a situation, your freedom is being deprived, I understand that, okay, and I am sensitive to that. But at the same time, when you look at, and I can't remember the name of the case now off the top of my head, but it's cited in my brief, I quoted someone at length, what the purpose of the mental health code is, right, and it is not only just to protect society, but it's also to turn it around and to help to protect the individual because I dare say, in this particular situation, we have an individual, and the reason why he was, there was an attempt to evaluate a commitment, is because he basically said he was going to use his pickaxe to climb the exterior of his apartment building in order to determine the escape route for his cat, should his cat want to escape through the window. He was also using the pickaxe around some electrical wires or what have you, okay. He had threatened, basically told Bettendorf police officers something about beating someone and then he also made a comment, oh, he, I'm not going to say he exposed himself, but he dropped his pants, okay. I mean, so we have an individual who has exhibited signs, he's lived alone, plus on top of that, he was taking a much higher dose of a blood thinner for his heart condition than what was safe for him. So what we have is we have a situation where trying to help, now if, and I realize there are rules and steps to take and follow. I think we did, but if we don't do anything, if we try to make this difference between an involuntary or voluntary commitment, if we don't do anything and the person gets hurt, then basically, it's like, why didn't you do something? You knew he was in this condition, why didn't you try to help him? So it's a tough situation all the way around, for state, for prosecutors, and for the individual. But the purpose of the Mental Health Code is an effort to take and help the patient. And so as far as the collateral consequences are concerned, I truly do not see a marked difference between either type of admission in this case. If he had no prior admission, it would probably be a different situation. Yes? I'd like to go back to the capable of repetition part. Okay. You talked about when it's fact specific. In this case, the specific facts are not what caused the problem. What caused the problem was the failure of the state to adhere to the statutory requirements. And that is certainly capable of repetition. We have a man who is, who has a mental illness. He apparently lives in Rock Island County. It's very likely that he's going to come before a court in Rock Island again. And the requirements under the statute are going to be for the trial court to have a dispositional report. For the trial court to do an examination of whether or not there are less restrictive alternatives for dealing with the patient. For the trial court to be sure that the evidence that's before it is properly challenged. That's all capable of repetition. With this patient, or this, is he called a defendant or a respondent? No, I refer to him as a respondent simply because. So it's possible to happen again with this respondent and with other respondents. So are you suggesting that we don't have an obligation to say this is not the right way to deal with these cases? Whether it's Darryl C or somebody else? Basically, with respect to everything that you have said that is perceived to be wrong with this case. There are other cases already decided on the issue. What I'm saying is, if this is the case, if what you're saying is true, then what you're saying is Alfred H. H. was wrongly decided. I don't think I'm saying that at all. Well, you are because in Alfred H. H. he's making the same arguments that you are. He's saying exactly the same thing that you did with respect to repetition. And the Supreme Court said, no, that's not what we're talking about. What you're dealing with here is, and I understand the individual aspects of the error, the fact specific. He was arguing a fact specific argument, I believe, with respect to the treatment and things of that nature. And the court said, no, that is fact specific. That escapes application of this exception under the mootness doctrine. And so if that were the case, if what you say is true, then technically speaking, every case that is moot would always fall under that exception. Because there's always a possible, even a criminal defendant, a criminal defendant could end up before a court in having some particular problem. But if this case is moot, you don't decide the case. You don't, you're according to what the Supreme Court said, and I think I have it written down here. Courts do not review cases merely to set precedent or guide future litigation. That's the Supreme Court. That's HH. That's 233-09-2nd of 360. If what you are saying is true, and if that's how the interpretation of that exception goes, then this exception swallows the rule. That's the only way I can answer that. Because technically speaking, there can always be a problem. There can always be an error. The error that we're talking about here are fact-specific errors with this counsel and supposedly with this commitment order. Are they likely to reoccur? Maybe so. Maybe not in exactly the same fashion, but they could occur again. Well, looking at it from a different standpoint, Dr. Ritterhoff has been the one testifying in some other cases, right? I don't know what you mean by that. Dr. Ritterhoff. He testified in this case, and I'm sure he's testified in other cases that have come before the court, but that's what you're talking about? Has he supplied the trial court with a written report? In this case, no. I don't believe there was a written report. Well, I know in this case there wasn't. In others, I don't know. Do you think in this case where the question was, in your opinion, Doctor, that is an inpatient psychiatric unit the least restrictive placement for Mr. Carlson at this time? And the answer is it is the least restrictive alternative for him to remain in the hospital. That's the totality of the testimony, basically, with regard to the least alternative method. And do you think that fits with the lock on Daniel M. and Robin C.? Well... Those are our cases, aren't they? Yeah. It's a situation where when you look at the record as a whole, when you look at what he testified to with respect to the mental illness, and when you look with respect to the problem and the explanation, especially the blood thinner problem and wanting to maintain that, and the fact that he doesn't have a grip and the fact that he testified, the fact that when he asked, well, what are you going to take and do when you get out of here? Well, I'm going to go to Iowa and sing karaoke and try to get myself into a film. He had no idea. He had no concept. Okay. What I'm trying to understand is if we had Robinson in the abstract and we just had Robinson to follow, I could see some arguments. But if we're following stare decisis and we have three cases from our district that refer to what you need to meet that statutory requirement, following Robinson even without a written report, you have to have something. Does this follow our decisions in the lockup, Daniel? Well, I think that it does. I think that if you're just going to look at the one question in the abstract and just pick that out and say this, then, of course, it doesn't follow. But I think what you have to do is I think you have to place everything in perspective. I think that's what Justice Carter is doing. He's trying to place this case. I'm not trying to place this case in perspective with the others. I'm trying to take in place Dr. Ritterhoff's testimony in perspective with respect to what was presented at this hearing. As minimal as the hearing might have been, time-wise. Okay. Thank you. I'd like to ask another question. That is the reason we're asking this is, for example, in a lockup, there's a statement that we hold consistent with the weight of authority that to satisfy the requirement to prove the hospitalization is the least restrictive alternative available for the respondent, the state is required to present evidence of what, if any, alternative treatments are available and why they are not suitable for the respondent. In this case, the state relied on the expert's conclusions that hospitalization was the least restrictive option for a lockup without producing evidence concerning other less restrictive treatment options. Now, if that's a statement holding from our court and there are, like, three decisions on this point, and coming out of the third district and interpreting Robinson, and, you know, that case is from 08. Here in 2010, we have, again, the same kind of situation coming up. How is that possible when our court's been saying something different as far as what's required? How is it that when I say, how is it that you interpret what you're saying in the court that you read? In other words, does the doctor have to go down a checklist? Okay. Family? No. Okay. Extended family? No. Friends? No. Outpatient treatment in some home that's, you know, halfway home or whatever? No. Does he have to go down a checklist and say that? Or, if based upon everything he's testified to concerning the condition of the individual, concerning his environment, concerning the danger that faces him, considering all that together, without going into specification as to each other potential place where somebody could be placed, simply says, I think that, basically, you can find it's least restrictive, because we're only going to have him here as long as necessary in order to get him to be aware of the problem. And I forget what the medicine was that they had administered to him in the past that helped to alleviate bipolar. His bipolar, and that's a factor to take into account also. The fact that Dr. Woodruff had treated him in the past himself on a voluntary basis is a fact that the medicine needed to help with the mental illness as well as to control the blood thinner, okay, was best resolved in treatment, in-house treatment. That was the least restrictive that would be effective to help address the issues that this individual had. So that's the only way that I can take and answer your question, because unless when you say, you know, the specifics, et cetera, unless they have to go down a checklist, I think when you read the testimony as a whole in this case, I think that standard is satisfied under the facts of this case. Yeah, assuming we get by the mootness argument, you've already spoken essentially to the least restrictive treatment option. What about the ineffective assistance of counsel? Ineffective assistance of counsel, this, again, is like a very unique situation in the sense of I understand that it is counsel's responsibility as an attorney to advocate for their client, okay? But there are situations in which there's nothing that can be advocated. The closest thing that I can come up with, at least on the appellate level, obviously, are Andrew's motions. Appellate defendant gets a case. They're appointed. They're not required to make up an argument. They're not required to take and simply do something just for the sake of doing something. What about I object? There's no report there. Well, except for the fact that under the report, at least under the case law, is not necessarily required to be in writing. And even if she were to take and even if she were to do that, what is the report going to say? Exactly what the doctor... I mean... Well, I think we do know exactly what the doctor's already testified to, okay? And with respect to the dealing with the restroom, okay, you don't have an individual supposedly 10 minutes after he was supposed to start telling his attorney, I'm going to the restroom. I'm going to be there for a while and march in with various items, including a newspaper. I think we can infer from that that the individual did not want to be part of the hearing. And I think we're allowed to make that inference, even though I know the statute says that the absence of a respondent can make no inference in that. I'm not making the inference that because of that, he's mentally ill and needed to be in the hospital. All I'm saying is we can interpret from his conduct what his intent was. What about the failure to cross-examine the witness? I look at what we have here, and I even ask myself, what would I have asked Dr. Ritterhoff? What would I have asked Dr. Ritterhoff? What kind of defense could I have put on? I can't come up with much of anything under these facts. Simply to take and question him about different aspects about, you know, what he talked about, what he did, what he said, okay? Sure, you can take and do that. If there's going to be no end result from that, nothing pertinent, nothing relevant, nothing of any significance, sometimes there are just cases where there simply is nothing you can do. And I don't think that we as lawyers, especially as being officers of the court, I don't think we have a duty, for lack of better terminology when I say make stuff up, I don't think we have a duty to go through motions just to make it look as though we've done something. It has never been my position. I've never done that in my 30-some-odd years of practicing law. If I don't have an argument or anything, that's it. I walk away. I fill the court. I have no argument. But, you know, I don't think there's any court that's required ritualistic statements to be made. I mean, sure, we have standards and rules, but, and you are not the trial attorney in this case, and you're up here, you know, arguing on behalf of the record that you've got, and the record is what it is, and you're stuck with it. And I admit, she did nothing. But, for example, with regard to the written report, earlier you said, well, the case law suggests you don't need a written report. Well, the case law suggests that there's been substantial compliance if the requirements have really been met through the testimony. It doesn't negate, the case law doesn't negate the statute that says there should be a written report. It says that, well, it was complied with substantially because all the information was there. And then you're suggesting, well, you don't even have to have that much, given our case law in the 3rd District, even that much, as long as we've got a conclusory statement from the doctor saying, well, this is the medical problems this guy has. Not totally accurate, okay, but not that I am necessarily the model of a reasonable man, although I guess in the law we all like to perceive ourselves as being the model of a reasonable person. But... Perceptions can fail. No kidding. But it's just the whole idea that, as I read the record, and as I see how things are that have been presented to me, and I can take and find, and I can look at the statute, and I can take and say, all these things have been addressed. All these things have been met. Okay. If counsel, in listening to Dr. Ritteroff, and in seeing, you know, I believe there was no community report, but I think there might have been the preliminary reports that were filed and things of this nature. In reading all of that, and in potentially even, and I don't know if she had any idea about his history or not. I don't know. But the thing is, if you take a look at all that, she may have come to the same conclusion that I did. Now, you know, is that reasonable? Is that what this court was looking for? I think it is. Obviously, you'll tell me. One way or the other. Thank you. Thank you. Thank you, counsel. Thank you. Your Honors, it's been very sad for me to listen to this argument this afternoon, as an advocate for persons with mental illness. 1990 was the Americans with Disabilities Act. 1994, I'm sorry, 1993 was the amendment to Section 3.8.10 post-Robinson. The code was amended to provide for a written dispositional report. So 20 years after the Americans with Disabilities Act, recognizing that all persons are important. Some people are entitled to reasonable accommodation because of their disabilities. Mental disabilities are included there. Sixteen years, 16, 17 years after the mental health code was amended post-Robinson to require a written dispositional report, we're still not seeing those written dispositional reports. Mr. Genetovic said, he used the words, this is a tough situation. He used the words that the mental health code is meant to help persons with mental disabilities. This is a tough situation, and yes, the mental health code is meant to help, and when it's not helping, and when the courts aren't doing their job, when the trial courts are not using the mental health code properly to get help that may or may not be needed for a person with mental illness, then, yes, those decisions need to be reviewed. And I think I've addressed mootness sufficiently, and I think the court has a full understanding of mootness in this situation. I would ask the court to please consider the least restrictive alternative in this case, the lack of a written dispositional report as required by the mental health code post-the Robinson case. And I would ask the court to please consider the problem with the ineffective assistance of counsel. No, but with the change of the statute, the legislators took into account, we can assume that they took into account the Robinson case in changing the mental health code to add that word written to require the written dispositional report. I know that courts are still allowing testimony in lieu of the written dispositional report, but 3810 does require a written dispositional report, and that amendment became effective about a year after the Robinson decision. So I think it's time to require that written dispositional report. When people take the time to put something in writing, they're paying it a lot more attention. And if anyone had taken the time to write out a dispositional report here, maybe the idea would have occurred to somebody that if this man needs some Coumadin and he needs the right dosage of Coumadin, maybe the least restrictive thing to do would be to get in touch with the pharmacy, make sure he's getting the right dosage, make sure he has an ongoing prescription, make sure he has a connection in the community who can be his liaison for his prescription. That was the main problem here, according to the testimony of the doctor. The doctor thought, well, you know, he didn't have the right level of Coumadin in his system, and his report was, I didn't have the right size pills, so I took what I had. Is that because of mental illness, or is that because he knew he needed to take the Coumadin, so he took what he had? We don't really know from the evidence here. Lastly, I would like to point out, too, that Mr. Ganinovic made the same mistake here as I think the trial court did in referring to the facts here as substantive evidence. The facts here were at best double hearsay. We don't know who provided this information to the police. Maybe the police provided it to the hospital emergency room or social worker, and that gets written in the record, or it gets told to the doctor, and then the doctor is telling it to the court. So I would ask the court to please distinguish between hearsay evidence that a doctor can rely on if it's reasonable to use as a basis for his opinion, but there still needs to be the substantive evidence to warrant commitment. But the opinion still comes in. I'm sorry? The opinion was still there. The opinion is there, yes. The opinion stands, but the opinion is only as good as the facts it's based on. And if we don't have the substantive evidence presented for the opinion, the opinion is called into question, too. Here, all we had was the hearsay admitted through the doctor. I would ask you to consider that Daryl C., yes, a person alleged to have a mental illness, is important. He is entitled to have his case reviewed. And if there were mistakes made, then I would ask this court to reverse, and I argue that there were most definitely mistakes made. Thank you. Thank you, Constable. We'll take this case under advisement. We'll recess briefly for a panel change for the next case, and we will resolve in this case and issue an opinion or decision with dispatch.